UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                            :
UNITED STATES OF AMERICA, *et al.*          :
                                            :   CASE NO. 1:10-CV-01724
        Plaintiffs,                         :
                                            :
vs.                                         :   OPINION & ORDER
                                            :   [Resolving Doc. Nos. 65, 66, & 70]
ALACRAN CONTRACTING, LLC, *et al.*          :
                                            :
        Defendants.                         :
                                            :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this contract dispute, Plaintiff Alliance Mechanical, Inc. ("Alliance") and Defendants Weatherproofing Technologies, Inc. ("Weatherproofing") and Liberty Mutual Insurance Company ("Liberty Mutual") file cross-motions for summary judgment. [Doc. 66; Doc. 70.] Both motions are opposed. [Doc. 72; Doc. 74.] The parties replied. [Doc. 75; Doc. 76.] Defendants Weatherproofing and Liberty also file motion under Federal Rule of Civil Procedure 11, seeking dismissal of the current action, as well as any other sanctions the Court deems appropriate. [Doc. 65.] The motion is opposed. [Doc. 73.]

**I. Background**

The current suit is a portion of a larger litigation pending in both state and federal court in Illinois. This lawsuit was originally filed on March 17, 2010 in the Northern District of Illinois and contained two counts. [Doc. 1.] Count I asserted claims by Sunlee Development, LLC ("Sunlee")

-1-

Case No. 1:10-CV-01724
Gwin, J.

for recovery under a variety of contract theories against Alacran Contracting, LLC ("Alacran") and Liberty Mutual. Count II of the original complaint made claims for recovery by Plaintiff Alliance against Defendants Weatherproofing and Liberty Mutual. [Doc. 1.] On June 4, 2010, Defendant Weatherproofing filed a motion to dismiss or transfer Count II of the complaint pursuant to Fed. R. Civ. Proc. 12(b)(3), based on a forum selection clause in the sub-contract agreement between Weatherproofing and Alliance. [Doc. 16.] Based on that clause, on August 5, 2010, Count II of the original complaint was transferred to the Northern District of Ohio and is now before the Court. [Doc. 25.]

This dispute involves a number of subcontracts related to a remodeling job at Fort McCoy, Wisconsin. Alacran, a defendant in the related Illinois action, was the prime contractor for the U.S. government for the rehabilitation of the Bachelor Officer's Quarters at Fort McCoy. [Doc. 1.] On October 27, 2008, Sunlee, a plaintiff in the related Illinois action, entered into a subcontract to perform approximately $2 million worth of construction on the barracks. [Doc. 1.] On January 1, 2009, Defendant Weatherproofing also entered into a subcontract agreement with Alacran on the same project. [Doc. 69-4.][1/] Defendant Liberty Mutual Insurance is a surety to both of those contracts and furnished the bond that is statutorily required under the Miller Act. [Doc. 70 at 15.] On February 12, 2009, Defendant Weatherproofing entered into two separate subcontracts with Plaintiff Alliance for plumbing work on the same project. [Doc. 69 at 2; Doc. 70 at 5.] Each contract was for plumbing work on a separate barracks building. [Doc. 69 at 4; Doc. 70 at 5.]

The subcontracts themselves did not include a description of the exact work to be completed,

---

[1/] Evidence submitted by the Plaintiff indicates that a contract between Alacran and Weatherproofing was awarded on October 17, 2008; however, the document submitted, which is a statement of agreement between Alacran and Weatherproofing, does not include any plumbing work. [Doc. 75-3 at 6.]

-2-

but rather referred generally to the project. [Doc. 69-1 at 14, 41; Doc. 75 at 3.] In total, the two subcontracts were worth about $150,000. [Doc. 69-1 at 2, 29.] Alliance's right to payment was conditioned upon the satisfaction of the conditions listed in Articles 5 and 14 of the subcontracts. [Doc. 69-1.] Article 5 provides that Weatherproofing is not required to pay Alliance more for the plumbing work than Weatherproofing receives in payment from the owner (Fort McCoy). [Doc. 69-1 at 2, 29.] Similarly, Article 15 of the subcontracts conditioned Alliance's payment on Weatherproofing's receipt of payment from the owner; Article 15 also conditioned payment to Alliance upon Weatherproofing's receipt of affidavits and waivers of lien from Alliance. [Doc. 69-1 at 15, 35.] Under Article 20 of the contracts, Weatherproofing retained the right to terminate the contract if Alliance failed to perform under the contract and also provided a formula for calculating the payment due to Alliance for partially completed portions of the plumbing should the contract be terminated. [Doc. 69-1 at 12, 39.]

Confusing this seemingly straight forward arrangement is the existence of Sunlee, a plaintiff in the related Illinois actions. Ryan Cole, who was the Manager of Sunlee at the time of the contracts at issue, and who now is acting as representative of Alliance, has submitted seemingly contradictory affidavits in the various lawsuits filed by Sunlee and Alliance related to the Fort McCoy project. [Doc. 69-2; Doc. 70-12; Doc. 73-2.] In the current action, Cole represents that Sunlee and Alliance are "somewhat interrelated" and that a "cooperative agreement [existed] between the two companies whereby Sunlee agreed to provide Alliance assistance in the performance and completion of jobs together[, which] included assistance with paperwork, insurance and the provision of materials and labor to Alliance." [Doc. 69-2 at 1.] Cole further represents to the Court that Alacran hired Sunlee to act as a subcontractor at the Fort McCoy site. [*Id.* at 2.] Cole says that on October 27, 2008,

Case No. 1:10-CV-01724
Gwin, J.

Alacran informed Sunlee that it was hiring Defendant Weatherproofing to perform plumbing work; on December 15, 2008, Cole says Alliance began performing the disputed plumbing work for Weatherproofing as a subcontractor without a formal contract. [*Id.* at 2.] This work was later formalized in the two subcontracts signed in February 2009. [*Id.* at 2.] Cole says that Alliance arranged to have workers and materials sent to the building site and also performed extensive plumbing work. [*Id.* at 2.] Thus, under this version of the story, Alliance and Sunlee are related business entities that each performed work at Fort McCoy under separate contracts.

However, in affidavits previously filed in related suits in Illinois, Cole presents a different story. In those suits, Cole represented that Dai Bui, an employee of Alacran, informed Sunlee on October 27, 2008, that due to government regulations related to military contracts that it was necessary to run the plumbing through another subcontractor called Weatherproofing. [Doc. 70-12 at 1; Doc. 73-2 at 1-2.] Cole says Sunlee and Alacran agreed that Alacran would pay Weatherproofing for the plumbing work, who would then transmit payment for the work to Sunlee through Alliance. [Doc. 73-2 at 2.] According to Cole, Alliance, who nominally performed the work, had no employees, and instead, the plumbing work on the site was completed by Sunlee employees through a cooperative agreement with Alliance. [*Id.*] Similarly, the materials used on the site were ordered on Sunlee's account with a supplier and then used by Alliance. [*Id.*] Cole further states that by the time Alliance and Weatherproofing formalized the contracts for plumbing in February 2009 that Sunlee had already "substantially completed the plumbing work at issue." [Doc. 70-12 at 2; Doc. 73-2 at 2.] According to the various emails sent between employees at Weatherproofing, Weatherproofing seemed to be fully aware of the arrangement between Sunlee and Alliance. [Doc. 74-1.] Under this version of the story, it appears that Sunlee was actually providing

Case No. 1:10-CV-01724
Gwin, J.

the disputed plumbing work for Alacran, and that the contractual arrangement between Weatherproofing and Alliance was merely a means of shifting the plumbing work – on paper – away from Sunlee to Alliance. Based on these two stories told by Ryan Cole, it is unclear which company actually performed the disputed plumbing work at Fort McCoy and who would be entitled to payment for the work completed.

The arrangement between Alacran, Weatherproofing, Sunlee, and Alliance would not have caused any problems, except that payment for the plumbing work was never made. According to Ryan Cole, Alliance and Sunlee were never provided with a specifications books and instead utilized standard water heaters, water closets, urinals, sinks, and faucets. [Doc. 69-2 at 2.] These fixtures were rejected by Fort McCoy and several changes order were added to the contracts, increasing the total cost of the subcontracts by close to $250,000. [Doc. 69-2 at 2.] A dispute with Alacran arose over payment for these changes and on April 2, 2009, Weatherproofing decided to withhold payment from Alliance until the dispute was resolved. [Doc. 74 at 6; Doc. 74-1 at 5-7.] It is undisputed that Weatherproofing did not make any payments to Alliance under either of the plumbing subcontracts. [Doc. 69 at 5; Doc. 70 at 7.] In his affidavit, Ryan Cole says that Weatherproofing refused to make payments to Alliance and that Weatherproofing also requested monthly itemizations of expenses, which Alliance says it provided. [Doc. 69-2 at 2.] However, no contractor's affidavits or lien waivers were ever furnished by Plaintiff Alliance to Defendant Weatherproofing, as was required under the subcontracts. [Doc. 70 at 6; Doc. 74 at 1.] It is also undisputed that neither Sunlee nor Weatherproofing ever received payment from Alacran for the disputed plumbing work. [Doc. 70 at

10; Doc. 73-2 at 3.][2]

On April 3, 2009, Jerry Edgington, the President of Alliance, sent an e-mail to Ryan Cole, then General Manager of Sunlee, carbon copying Dai Bui at Alacran, saying that Alliance was dissolving due to lack of payment and would be unable to perform its contractual obligations. [Doc. 70-8.] On April 7, 2009, Steven Johnson, Weatherproofing's construction manager, wrote a letter to Jerry Edgington at Alliance, confirming receipt of Alliance's statement of inability to perform, and also informing Alliance that it was terminating the subcontracts between Weatherproofing and Alliance. [Doc. 70-9.] According to progress reports compiled at Fort McCoy, the plumbing work on the site was largely complete at the time the subcontracts were terminated. [Doc. 69 at 4; Doc. 69-2 at 26-27.] After the contracts between Alliance and Weatherproofing were terminated, the contract between Weatherproofing and Alacran was also amended. [Doc. 70 at 7-8; Doc. 74 at 8-9.] Although the plumbing was already nearly completed, on May 4, 2009, the plumbing work now in dispute was removed from Weatherproofing's contract with Alacran, a change that was proposed by Weatherproofing following the termination of its subcontracts with Alliance and despite the contract provision that provided a payment formula when the plumbing contract was terminated before completion. [Doc. 70 at 7-8; Doc. 70-10; Doc. 70-11; Doc. 74 at 8-9.]

In the second amended complaint, filed on December 28, 2010, Plaintiff Alliance now asserts two causes of action. [Doc. 56-1.] Specifically, the Plaintiff brings (1) a claim under the Miller Act, 40 U.S.C. §§ 3131-3134, seeking payment for plumbing work allegedly performed for Defendant Weatherproofing pursuant to the subcontract agreement between Alliance and Weatherproofing and (2) a claim alleging breach of contract, also seeking payment from Defendant Weatherproofing for

---

[2] According to the original complaint, the contract between Alacran and Sunlee also seems to have fallen apart around the same time. [Doc. 1 at 4.]

the plumbing work allegedly performed under the subcontract agreement. [Doc. 56-1.]

The Plaintiff and Defendants now file cross-motions for summary judgment. The Plaintiff seeks judgment on Count II of the second amended complaint (breach of contract), saying that it is undisputed that it performed plumbing work at Fort McCoy under the subcontract agreement and that it never received payment. [Doc. 66; Doc. 69.] The Defendants seek judgment on both counts of the complaint, arguing: (1) that Alliance never complied with contractual conditions on payment, specifically by providing affidavits and lien waivers; (2) that payment to Alliance was conditioned upon Weatherproofing receiving payment from Fort McCoy, which did not occur; (3) that Alliance failed to properly notify Weatherproofing of its claim for payment and waived those claims; and (4) that Sunlee, rather than Alliance actually provided all of labor and materials on the plumbing project, rendering Alliance's claim for payment void. [Doc. 70 at 4.] The Defendants also file a motion for sanctions, seeking dismissal of the suit and attorney's fees. [Doc. 65.]

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "A fact is material if its resolution will affect the outcome of the lawsuit." *Martingale, LLC v. City of Louisville*, 361 F.3d 297, 301 (6th Cir. 2004). The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions

of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See id.* at 586. Nor can the non-moving party rely upon mere allegations or denials of its pleadings. Fed. R. Civ. P. 56(e). In responding to a summary judgment motion, the non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (internal quotation omitted).

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *Thomas v. Cohen,* 453 F.3d 657, 660 (6th Cir. 2004) (citations omitted). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)). Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law." *Martingale*, 361 F.3d at 301.[3/]

## III. Analysis

*III.A  Cross-Motions for Summary Judgment*

The Court begins its analysis by considering Defendant Weatherproofing's various defenses to payment under the contract, which the Defendants say compels the Court to grant summary judgment in their favor and to dismiss both counts of the second amended complaint. [Doc. 70 at 4.] The Court will also consider Plaintiff Alliance's motion for summary judgment, in which Alliance says that it completed the plumbing work and is therefore entitled to payment. [Doc. 66; Doc. 69.]

First, the Defendants say that they are not obligated to pay Alliance because Alliance failed provide affidavits and waivers of lien with its submissions for payment. [Doc. 70 at 10.] Article 15 of the subcontract agreements between Weatherproofing and Alliance provides that "concurrent with the submittal of each Application for Payment, Subcontractor shall furnish Affidavits and Waivers of Lien by Subcontractor . . . Furnishing such Affidavits and Waivers of Lien, in the form approved by Contractor, shall be a condition to payment." [Doc. 69-1 at 15, 35.] It is not disputed that Alliance never furnished such affidavits or liens to Defendant Weatherproofing. [Doc. 74 at 1.]

However, the Defendants' argument on this point is belied by the terms of the contract. First, the plain language of Article 15 indicates that it only governs payment during the pendency of the contract. [Doc. 69-1 at 15, 35.] Alliance's non-compliance with this Section may excuse Weatherproofing's non-payment – undercutting Alliance's argument that the non-payment was a

---

[3/] For purposes of considering Defendant's motions, the Court accepts the Plaintiff's version of the facts as true. But for purposes of considering the Plaintiff's motion for summary judgment, the Court accepts the Defendants' version as true.

Case No. 1:10-CV-01724
Gwin, J.

breach of the contract – but it does not bar Alliance from now recovering for the work allegedly performed prior to the termination of the contract. Rather, Article 20 of the contract specifically provides a formula for calculating the payment in the event that the subcontracts are terminated prior to completion. [Doc. 69-1 at 12, 39.] Indeed, "[w]here the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract." *City of St. Marys v. Auglaize Cty. Bd. of Commrs.*, 875 N.E.2d 561, 567 (Ohio 2007). Thus, Article 20 of the contract now governs Alliance's entitlement to payment, and not Article 15, as the Defendant argues. Under Section 20.2, Alliance is entitled to payment for "Work properly completed and stored as of the date of Contractor's written notice to Subcontractor of Contractor's intent to terminate the Agreement . . ." to the extent that Alliance, and not some other party, actually completed that work. [Doc. 69-1 at 12, 39.] The Court, therefore, rejects the Defendants' argument on this point.

Second, the Defendants say that Weatherproofing was not required to make payment to Alliance because Alliance's entitlement to payment was expressly conditioned upon Weatherproofing receiving payment from Fort McCoy. [Doc. 70 at 12.] The Defendants point to Section 15.6 of the contract, which provides that "Contractor's obligation to pay Subcontractor is expressly contingent and conditioned on Contractor's actual receipt of payment from Owner for Subcontractor's work or claims." [Doc. 69-1 at 8, 35.] The Defendants say that since Weatherproofing never "billed nor received payment regarding any of the plumbing work that Alliance claims to have performed," that they are not now required to make any payment to Alliance. [Doc. 70 at 12.]

However, the Court must also reject this somewhat disingenuous argument. First, as the Court already noted, Article 20, and not Article 15, now governs Alliance's entitlement to payment for the work allegedly completed at Fort McCoy. Any payment that Alliance may now be entitled

Case No. 1:10-CV-01724
Gwin, J.

to should be calculated under that formula. Second, it is undisputed that Weatherproofing was not paid by Alacran for the plumbing work because Weatherproofing specifically requested that its contract with Alacran be changed to remove the plumbing. [Doc. 70 at 7-8; Doc. 74 at 8-9.] The reason why Weatherproofing did not ever receive payment for the plumbing work, which was largely completed at the time of the subcontract termination, was because Weatherproofing amended its own contract to remove its entitlement to payment. Weatherproofing may not escape its contractual duty to provide payment for the plumbing work by unilaterally changing the terms of its own contract with Alacran, particularly since this amendment occurred a month after the subcontracts with Alliance were terminated. [Doc. 70 at 7-8; Doc. 70-10; Doc. 70-11; Doc. 74 at 8-9.] Accordingly, the Court rejects this argument.

Having rejected both of these defenses to payment, the Court now will consider the Defendants' third defense to payment – that Alliance failed to properly notify Weatherproofing of its claims for payment, and thus waived any claims related to them. [Doc. 70 at 14-15.] Section 13.8 of the subcontract provides that "[A]ll claims or requests relating to the Contract Sum or schedule of Work must be made in writing with supporting detail and documentation within five days of Subcontractor's discovery of the claim . . . [and] Subcontractor's failure to strictly comply with this provision . . . shall be conclusively presumed to constitute waiver of Subcontractor's rights and claims." [Doc. 69-1 at 11, 34.]

It is currently unclear whether Alliance provided notice of its claims for payment on the subcontracts or the change orders. Alliance offers evidence showing that payroll certificates, as well as change orders for the upgrades on the plumbing installations, were submitted to Weatherproofing and Alacran for payment prior to the termination of the contract. [Doc. 74-3 at 15-24.] There is also

-11-

Case No. 1:10-CV-01724
Gwin, J.

evidence that Weatherproofing was aware of these claims, giving the Defendant notice that Alliance was claiming payment for the work completed. [Doc. 74-1 at 5.] Although the record remains underdeveloped, there is evidence indicating that some timely claim for payment was made by Alliance. As such, granting summary judgment on this grounds would be inappropriate; rather, a determination of whether Alliance's various invoices for payment satisfied Article 13's requirements is a matter that should be resolved by a jury.

Finally, the Defendants also say that they are entitled to summary judgment on both remaining counts because Ryan Cole, Alliance's representative, has made conflicting statements regarding who performed the plumbing work and that Alliance has failed to prove that it provided the services and materials on the Fort McCoy project. [Doc. 70 at 13-14.] Plaintiff Alliance argues that it is entitled to summary judgment on Count II of the complaint because there is undisputed evidence on the record proving that it performed the plumbing work and was never paid for it. [Doc. 69 at 5-7; Doc. 74 at 10-11.]

The Court begins by noting that the Plaintiff is correct in contending that it is undisputed that Weatherproofing and Alliance entered into two subcontracts for plumbing work at Fort McCoy and that this plumbing work was largely completed by the time the subcontracts were terminated in April 2009. [Doc. 69 at 5-7.] There are a number of unresolved factual issues, however, that make summary judgment inappropriate on either count. First, and most importantly, it remains unclear who actually completed the plumbing work in dispute and what was the relationship between Sunlee and Alliance in doing the work. There are statements by Ryan Cole making contradictory assertions about which company completed the plumbing work. Indeed, as detailed earlier in this opinion, Cole now claims that Alliance purchased all of the materials used and performed all of the plumbing work

Case No. 1:10-CV-01724
Gwin, J.

through a cooperative agreement with Sunlee. [Doc. 69-2 at 1-3.] However, in an affidavit submitted in the companion case in the Northern District of Illinois, Cole states that Sunlee "had substantially completed the plumbing work at issue" by the time the written subcontracts were entered into and that all of the materials used were "ordered on Sunlee's account." [Doc. 73-2 at 2.]

Although this evidence standing alone suggests that the Defendants may be entitled to judgment, as a party may not create an issue of material fact by submitting contradictory affidavits, *United States ex rel. Compton v. Midwest Specialties*, 142 F.3d 296, 303 (6th Cir. 1998), there is, nonetheless, sufficient other evidence to create an issue of material fact regarding which company actually completed the plumbing work at Fort McCoy (and who, therefore, would be entitled to payment). For example, Alliance shows payroll certificates submitted to Weatherproofing requesting reimbursement for wages paid, emails from Weatherproofing employees indicating that Alliance performed the plumbing work, and other various documentation also suggesting Alliance performed the work. [Doc. 69-2 at 9-24; Doc. 74-1 at 5-8; Doc. 74-3 at 6; Doc. 75-1 at 3-18.] Similarly, Alliance also explains the confusing and suspicious arrangement between it and Sunlee through a cooperative agreement, in which Sunlee agreed to administer paperwork, lend employees, and provide payroll services to Alliance. [Doc. 74-3.] It is thus unclear from the record the extent to which Alliance actually performed the plumbing work at Fort McCoy and, therefore, the Court is unable to make a determination of whether Alliance is entitled to payment under Section 20 of the subcontracts. *See Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 704 (6th Cir. 2005) ("Under Ohio law, a claimant seeking to recover for breach of contract must show damage as a result of the breach. Damages are not awarded for a mere breach of contract; the amount of damages awarded must correspond to injuries resulting from the breach."); *Carlisle v. T & R*

Case No. 1:10-CV-01724
Gwin, J.

*Excavating, Inc.*, 704 N.E.2d 39, 42 (Ohio App. Ct. 1997) (holding that a contract cannot exist without consideration and that consideration does not exist where there is no bargained for benefit or detriment).

Accordingly, because there are a number of factual disputes that should be resolved by a jury – most importantly and basically who actually performed the work in question – the Court **DENIES** both the Defendants' and the Plaintiff's motions for summary judgment.

*III.B Motion for Rule 11 Sanctions*

The Defendants request that the Court dismiss the action in its entirety and also award attorney's fees and costs incurred defending this action under both Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. [Doc. 65.] Specifically, the Defendants request sanctions because Ryan Cole, the primary representative of Alliance, submitted seemingly contradictory affidavits in this suit and the related Illinois actions. [Doc. 65.] The Plaintiff says that sanctions are not appropriate because it was submitting these affidavits in support of alternative theories of recovery and because any false statements in the Illinois affidavits were made inadvertently. [Doc. 73.]

Rule 11 sanctions are generally warranted if the attorney's conduct was unreasonable under the circumstances. *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997). "In determining an appropriate sanction under amended Rule 11, the court should consider the nature of the violation committed, the circumstances in which it was committed, the circumstances (including the financial state) of the individual to be sanctioned, and those sanctioning measures that would suffice to deter that individual from similar violations in the future. " *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 420 (6th Cir. 1992). Equitable considerations and a determination of the least severe sanction necessary should also be factors that are considered. *Id.* Finally, "in deciding the nature and extent

Case No. 1:10-CV-01724
Gwin, J.

of sanctions to impose, the district court is given wide discretion." *INVST Financial Group v. Chem-Nuclear Systems*, 815 F.2d 391, 401 (6th Cir. 1987).

The Court first finds that the affidavits filed by Ryan Cole are contradictory with one another. The Plaintiff's position that it may file contradictory affidavits as a means of supporting alternative theories of recovery is simply wrong. The Plaintiff may plead alternative legal theories of recovery, but affidavits are sworn factual statements.

Despite this arguable misconduct, the Court does not find that dismissal of this suit, or any other sanctions, are appropriate at this time. Although the Plaintiff has acted inappropriately in submitting these affidavits, the Court does not find that their submission has harmed or otherwise prejudiced the Defendants in any way. Even with the affidavits of Ryan Cole entirely removed from the record, the Court still finds that there are substantial factual disputes regarding who performed the work at Fort McCoy, justifying a denial of summary judgment. The Court believes that the substance of this motion – essentially that the Plaintiff's claims are without merit – is better resolved by a trial on the merits. Additionally, rather than helping the Plaintiff, the contradictory statements actually contribute to the confused state of the record and weighed heavily in the Court's decision to deny the Plaintiff's motion for summary judgment. Therefore, the Court **DENIES** the Defendants' motion for sanctions.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** the Defendants' motion for summary

Case No. 1:10-CV-01724
Gwin, J.

judgment, **DENIES** the Plaintiff's motion for summary judgment, and **DENIES** the Defendants' motion for sanctions.

IT IS SO ORDERED.


Dated: March 25, 2011               s/     *James S. Gwin*
                                    JAMES S. GWIN
                                    UNITED STATES DISTRICT JUDGE