## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| The United States of America, | ) | |
| for the use and benefit of | ) | |
| Alliance Mechanical, Inc., *et al.*, | ) | |
|  | ) | |
| *Plaintiffs,* | ) | |
|  | ) | Case No. 11 CV 50126 |
| v. | ) | |
|  | ) | Magistrate Judge Iain D. Johnston |
| Alacran Contracting, LLC, *et al.*, | ) | |
|  | ) | |
| *Defendants.* | ) | |

## REPORT AND RECOMMENDATION

It is this Court's Report and Recommendation that Plaintiff's complaint be dismissed as untimely. It is further this Court's recommendation that Liberty Mutual Insurance Company's Motions *in Limine* [297] [298] be denied. Any objection to this Report and Recommendation must be filed by March 27, 2018. Failure to object may constitute a waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989).

## STATEMENT

### I. Background

Plaintiff, Alliance Mechanical, Inc. ("Alliance"), brings this action against Defendants, Alacran Contracting, L.L.C. ("Alacran") (as assignee of Weatherproofing Technologies, Inc. ("WTI"))[1] (Counts I & II) and Liberty Mutual Insurance Co. ("Liberty") (Count I only). Liberty is the surety under a payment bond ("Bond") which Alacran was required to provide under the Miller Act as the prime contractor on a project to renovate the Bachelor Officers' Quarters at Fort McCoy, Wisconsin ("the Project"). WTI was a subcontractor on the Project. Alliance was a plumbing subcontractor to WTI on the Project.

The Miller Act provides that on any contract of more than $100,000 for "the construction, alteration, or repair of any public building or public work of the Federal Government" the contractor must supply "[a] payment bond with a surety satisfactory to the officer for the protection of all persons supplying labor and material in carrying out the work provided for in the contract for the use of each

_____

[1] Alacran has assumed by way of assignment any obligations WTI may have to Alliance.

person." 40 U.S.C. § 3131(b)(2). A payment bond, in the penal sum of $1,313,429.60 was supplied for the Project with Alacran as principal and Liberty as surety, binding both principal and surety jointly and severally. In Count I of its Second Amended Complaint, Alliance seeks to recover from Liberty under the payment bond for sums Alliance claims are due from Alacran for labor and materials supplied on the Project prior to April 7, 2009. *See* Alliance's Second Amended Complaint at 3, Dkt. 56-1.

On April 7, 2015, Judge Reinhard entered an order of default against Alacran. Apr. 7, 2015 Court order, Dkt. 163. On July 18, 2016, Judge Reinhard ruled on the remaining parties' cross-motions for summary judgment. *See* July 18, 2016 Court Order, Dkt. 248. Judge Reinhard denied Alliance's and Liberty's cross-motions. *Id.* Judge Reinhard found that Liberty presented evidence suggesting Alliance's claim was untimely filed, but determined there was a genuine issue of material fact as to the date labor or materials were last supplied. *Id.* Judge Reinhard encouraged the parties to reevaluate the possibility of settlement or proceed with an evidentiary hearing to determine whether the action was timely filed. *Id.* The parties were unable to resolve this case with a settlement. Accordingly, Judge Reinhard referred this case to the undersigned for an evidentiary hearing on the issue of timeliness. Feb. 3, 2017 Minute Entry, Dkt. 263.

On October 11, 2017, the Court held the evidentiary hearing. Alliance and Liberty submitted trial briefs before the hearing and several exhibits were admitted during the hearing. Alliance's Trial Brief, Dkt. 268; Alliance's Exhibits, Dkt. 270; Liberty's Trial Brief, Dkt. 271; Liberty's Exhibits, Dkt. 301. Alliance stood on the evidence it presented in a related case in which another subcontractor (Sunlee) on the same Project similarly sought to recover from Alacran. *See* Case No. 10 CV 50067.[2] Specifically, Alliance relies on the affidavit of Ryan Cole (Sunlee's general manager) with attachments that included subcontractor invoices, and the deposition testimony of Fort McCoy employee Mary Purpus with attached contract progress reports and contract inspection forms for the Project.[3] Alliance's Exhibit List, Dkt. 270.[4] Liberty called Ryan Cole, Dai Bui (Alacran's owner), and James Kocourek (Sunlee's former construction administrator) during the hearing.

## II. Discussion

[2] The Court held a joint evidentiary hearing for both cases.

[3] Plaintiff relies on the same evidence it presented to Judge Reinhard during summary judgment in the companion case (Case No. 10 CV 50067), despite his finding that there was a genuine issue of material fact and pointing out that Sunlee's evidence "is not sufficiently compelling" and "is thin." July 18, 2016 Court Order at 4, 7, Dkt. 211 in Case No. 10 CV 50067.

[4] Alliance did not submit the November 16, 2015 affidavit from Ryan Cole that it relied on in its summary judgment brief. *See* Alliance's Statement of Facts, Dkt. 206-11.

On March 17, 2010, Alliance filed its original complaint for damages under the Miller Act, 40 U.S.C. §§ 3131-34. The Miller Act requires that "[a]n action brought under this subsection must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4). "The [Act] is remedial and to be liberally construed, but the giving of notice and bringing of suit within the prescribed time is a condition precedent to the right to maintain the action." *United States ex rel. Material Serv. Div. of Gen. Dynamics Corp. v. Home Indem. Co.*, 489 F.2d 1004, 1005 (7th Cir. 1973). Accordingly, to be timely filed on March 17, 2010, the last labor performed or material supplied by Alliance must have occurred by March 17, 2009.

As Judge Reinhard previously determined, Alliance has the burden to prove that its action was timely filed. *See* July 18, 2016 Court Order at 3, Dkt. 248; *see also* Nov. 22, 2016 Court Order at 2, Dkt. 258 (upholding that finding after a motion to reconsider). Moreover, to collect under the Miller Act, Alliance must prove the following elements: (1) that labor and materials were supplied for work in the particular contract at issue; (2) that the supplier is unpaid; (3) that the supplier had a good faith belief that the labor and materials were for the specified work; and (4) that the jurisdictional requirements were met, namely that Alliance filed the instant complaint within the one year statute of limitations period. *See United States ex rel. Aldridge Electric Co. v. Pickus Construction & Equipment Co.*, 98 C 3261, 2000 U.S. Dist. LEXIS 1511, at *8 (N.D. Ill. Feb. 7, 2000), *remanded by* 249 F.3d 664 (7th Cir. 2001); *United States ex rel. Allied Roofers Supply Corp. v. Blinderman Construction Co.*, No. 86 C 5655, 1986 U.S. Dist. LEXIS 16257, at *4 (N.D. Ill. Dec. 18, 1986). The parties' dispute is limited to the fourth element.

Alliance argues that it provided labor and materials to the Project as late as April 7, 2009,[5] the date it was terminated from the Project.[6] In contrast, Liberty argues that Alliance's last day was March 6, 2009, the date Liberty contends that Alliance abandoned the Project. Accordingly, the Court must determine whether Alliance furnished labor or materials through March 17, 2009, one year before it filed suit, or whether it abandoned the Project earlier as asserted by Liberty.

It was Alliance's burden at the hearing to show that it performed labor or supplied materials on March 17, 2009 or later. Alliance claims to have presented "irrefutable evidence establishing that subcontractors were indeed working and

---

[5] In summary judgment briefing, Alliance asserted that it supplied labor and materials to the Project only through April 3, 2009, the date Alliance sent a notice of dissolution. *See* Alliance's Statement of Facts ¶37, Dkt. 206; *see also* Ryan Cole's Affidavit dated Nov. 16, 2015, Dkt. 206-11.

[6] On April 7, 2009, WTI sent a letter to Alliance, notifying Alliance that it was terminating the parties' contract. Alliance's Second Amended Complaint at 3, Dkt. 56-1; *see also* Exhibit C to Second Amended Complaint, Dkt 56-3.

supplying materials or equipment rentals on and after March 17, 2009, making the complaint timely as a matter of law." Alliance's Trial Brief at 2, Dkt. 268. Alliance asserts that in determining the last day of work on the Project, "the Court must consider *any* work performed by *any* subcontractors." *Id.* (emphasis added). Accordingly, Alliance focuses on the work of Sunlee's subcontractors to satisfy the statute of limitations.

In advance of the hearing, Alliance provided an affidavit from Ryan Cole stating that seven Sunlee subcontractors provided labor and/or materials to the Project through March 25, 2009. Ryan Cole's Affidavit dated Jan. 5, 2016, Dkt. 270-4. Attached to the affidavit were invoices from the seven subcontractors. Exhibits A-H, Dkt. 270-4.[7] Ryan Cole averred that the subcontractor invoices "are all records made and kept in the course of Sunlee's regularly conducted business activity, are records that are routinely made or received and kept in the course of Sunlee's business, in the [sic] Sunlee's usual practice, were made or received at or near the time of the event that they record, and were made or received by a person with knowledge, or from information transmitted by a person with knowledge, and who reported such knowledge in the regular course of business." Ryan Cole's Affidavit dated Jan. 5, 2016, Dkt. 270-4 at 4.

Liberty filed two Motions *in Limine* to bar the majority of Ryan Cole's affidavit and the attached invoices as either irrelevant or inadmissible hearsay. Liberty's Motions *in Limine*, Dkts. 297-298. The Court took these matters under advisement until after development of a factual record during the hearing.

The Court rejects Liberty's first argument that this evidence is irrelevant under Federal Rules of Evidence 401 and 402. *See* Liberty's Motion *in Limine*, Dkt. 298. The Miller Act requires that "[a]n action brought under this subsection must be brought no later than one year after the day on which the last of the labor was performed or material was supplied *by the person bringing the action*." 40 U.S.C. § 3133(b)(4) (emphasis added). Furthermore, the labor and materials must by furnished "in carrying out work provided for in a contract." 40 U.S.C. § 3133(b)(1). In this case, Alliance, not Sunlee, had a subcontract with WTI for work on the Project. *See United States ex rel. Am. Civil Construction, LLC v. Hirani Engineering*, 263 F. Supp. 3d 99, 111 (D.D.C. 2017) (finding that "the statute of limitations begins to run when the subcontractor bringing suit 'last' performed labor or supplied materials for 'work provided for' in the subcontract").

Nevertheless, Alliance presented evidence during the parties' summary judgment briefing that Sunlee and Alliance had a cooperative agreement wherein they agreed to share personnel for work performed on the Project. Ryan Cole's Affidavit dated Nov. 16, 2015 at 3, Dkt. 206-11; *see also* Exhibit 1 (Cooperative

---

[7] The same affidavit and invoices were submitted as part of the parties' summary judgment briefing.

Agreement), Dkt. 206-12. However, Sunlee and Alliance remained separate entities, and Sunlee did not have a contract with WTI. *See* July 18, 2016 Court Order at 5, 7, Dkt. 248. Accordingly, Judge Reinhard previously determined that "Sunlee was providing labor and supplies to the project through its cooperative agreement with Alliance not through any direct relationship with WTI." *Id.* Therefore, although not explained at the evidentiary hearing, the Court finds this evidence sufficient for Alliance to rely on the work of Sunlee when determining timeliness. The Court recommends denying Liberty's Motion *in Limine* to bar the evidence.

As to Liberty's argument about hearsay, at the hearing, Ryan Cole testified that Sunlee received the attached invoices, but that he relied on the subcontractors to provide proper billing and invoicing. Ryan Cole further testified that he called most of the subcontractors sometime in March 2009. Ryan Cole testified that he typically spoke with the owner of the business or someone in their accounting department, but for these calls was unsure whom he spoke with. He also did not ask the subcontractors how they prepare their invoices or records and did not recall what specific invoices he spoke with the subcontractors about. He testified that subcontractors generally send an invoice within 30 days of service, sometime sooner, but he never testified that he confirmed any of the work or materials on these seven subcontractors' invoices was performed or provided on or after March 17, 2009.

Pursuant to Federal Rule of Evidence 902(11), Ryan Cole's affidavit relating to the attached invoices must meet the requirements set forth in Federal Rule of Evidence 803(6)(A)-(C), "as shown by certification of the custodian or another qualified person" that:

> "(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity."

Federal Rules of Evidence 902(11), 803(6)(A)-(C). "A qualified witness need not be the author of the document but must have personal knowledge of the procedure used to create and maintain the document." *Webb v. Midland Credit Management*, No. 11 C 5111, 2012 U.S. Dist. LEXIS 80006, at *10 (N.D. Ill. May 31, 2012) (quoting *United States v. Reese*, 666 F.3d 1007, 1017 (7th Cir. 2012)).

Ryan Cole's testimony at the hearing makes the Court question whether he had sufficient personal knowledge of how the subcontractor invoices were created and maintained. *See Webb*, No. 11 C 5111, 2012 U.S. Dist. LEXIS 80006, at *12-15

- 5 -

(finding that a party may not merely assert that it incorporated and relied on third-party records in conducting its day-to-day business activities, but rather must satisfy the foundational requirements for admission in Rule 803(6) through a person with personal knowledge of how the third-party record was created). However, the Court finds Ryan Cole's testimony and statements in his affidavit sufficient to admit the invoices under Federal Rules of Evidence 902(11). No other testimony or evidence at the hearing makes the Court doubt the reliability or trustworthiness of the underlying invoices. The Court finds that Liberty's concern about the reliability of Ryan Cole's affidavit goes to the weight the Court may give to the affidavit and invoices, not their admissibility. For purposes of this ruling, the Court has considered the affidavit and invoices in light of the testimony provided at the hearing, and recommends denying Liberty's Motion *in Limine* to bar the evidence. Nevertheless, although the Court has considered these invoices, it still finds that Alliance has not met its burden to prove that it performed work or supplied materials on or after March 17, 2009.

First, although Alliance had a cooperative agreement with Sunlee, it has failed to show how it can rely on Sunlee's subcontractors, which would be sub-sub-subcontractors on the Project, as they are not within the class of claimants entitled to recover under the Miller Act. *See J. W. Bateson Co. v. United States*, 434 U.S. 586, 591 (1978) (stating that Congress "intended the scope of protection of a payment bond to extend no further than to sub-subcontractors"). Even if these sub-sub-subcontractors could be considered, Sunlee submitted the very same subcontractor invoices to support its own work on the Project. Now, Alliance is submitting the exact same evidence to support its work, despite the fact that Alliance and Sunlee were performing different work under different subcontracts for the Project. Alliance has failed to present any evidence that Sunlee's subcontractors were performing work for Alliance. Nevertheless, the Court finds, as it did in the related case for Sunlee, that even considering this evidence, the subcontractor invoices are insufficient to prove that Alliance's claim was timely filed.

In his affidavit, Ryan Cole states that as general manager of Sunlee he was "familiar with all aspects of the transactions and the work that was performed at the project at Fort McCoy, Wisconsin." Ryan Cole's Affidavit dated Jan. 5, 2016 at 2, Dkt. 270-4. However, at the hearing, Ryan Cole testified that he was never at the Project site to see when a delivery was made or what work was being performed. Furthermore, Ryan Cole testified that he was not involved in the daily operations of Alliance. Noticeably absent is any testimony or other evidence from Alliance or Sunlee's seven subcontractors themselves about the work they allegedly performed on or after March 17, 2009.

The Court had to consider the subcontractors' invoices in light of other evidence presented at the hearing, namely the testimony of Dai Bui, the owner of

Alacran. Dai Bui testified that he was involved in the Project since its inception in 2008 and was familiar with Sunlee and Alliance's work on the Project. In contrast to Ryan Cole's testimony that he was never at the Project site, Dai Bui testified that he was at the Project site once or twice a month. Dai Bui also testified about Alacran's certified payroll for the work week of March 9 through March 13, 2009. Liberty's Exhibit 6, Dkt. 301-1. Dai Bui testified that the sixteen employees listed were former employees of Sunlee or Alliance, who were now working on the Project at Alacran's direction and were getting paid by Alacran. Dai Bui testified that these employees remained on Alacran's payroll for some time and did not go back to work for Sunlee or Alliance.

Ryan Cole testified that once he received the subcontractor invoices after March 25, 2009, he called the subcontractors referenced in his affidavit and confirmed that they were still working at the Project site. He did not testify that he confirmed they were still working for Sunlee or Alliance, rather than for Alacran as Dai Bui testified. Because Ryan Cole provided little additional information about these invoices, the Court will address each in turn.[8]

Swanson's Commercial Flooring, LLC

Attached to Ryan Cole's affidavit is an invoice from Swanson's Commercial Flooring, LLC ("Swanson's") dated March 19, 2009 for $10,315. Exhibit A, Dkt. 270-4. However, Ryan Cole testified that nothing in Swanson's invoice dated March 19, 2009, referenced services that were rendered or materials that were supplied on or after March 17, 2009. Additionally, Ryan Cole testified that he was uncertain that he even called Swanson's about this specific invoice.

In addition to the invoice, Ryan Cole also attached a letter Swanson's law firm sent to Liberty, asserting that Swanson's performed labor and supplied material to the Project between February and August 2009. Exhibit B, Dkt. 270-4. However, the letter merely states that Swanson's work was performed sometime "between February and the end of August 2009." The letter does not address whether labor or material was supplied on behalf of Sunlee or Alliance, or whether it was supplied on or after March 17, 2009.

Ryan Cole's affidavit avers only that Swanson's provided labor and materials through March 25, 2009. The affidavit does not contradict Dai Bui's testimony that after Sunlee was terminated on March 28, 2009, Alacran retained some of Sunlee's subcontractors to continue work on the Project. Accordingly, it is unclear when the work was performed and for whom. Without more information, neither the invoice nor the letter provides sufficient evidence to prove that Swanson's provided labor or materials on or after March 17, 2009. *See United States use of Material Service*

---

[8] Ryan Cole testified that Sunlee had written subcontractors with all seven subcontractors, but none of these were provided in the record.

*Division of General Dynamics Corp. v. Home Indemnity Co.*, 489 F.2d 1004, 1007 (7th Cir. 1973) (affirming that suit was not brought within one-year period, in part, because "[n]one of the listed invoices in any of the statements bear dates indicating delivery of material covered thereby").

City Wide Insulation of Green Bay

Ryan Cole attached a statement from City Wide Insulation of Green Bay ("City Wide") dated July 2, 2009 to aver that it provided materials and labor from January 21 through March 19, 2009. Ryan Cole's Affidavit dated Jan. 5, 2016, Dkt. 270-4 at 3; Exhibit C, Dkt. 270-4. However, the statement from City Wide merely lists transaction dates from January 21 through March 19, 2009 with corresponding invoice numbers. Alliance provided no other evidence to support that the transaction dates relate to the date labor was provided or materials were delivered. Therefore, the Court finds this statement insufficient to prove that City Wide provided labor or materials on or after March 17, 2009.

Badgerland Supply, Inc.

Ryan Cole attached an invoice from Badgerland Supply, Inc. ("Badgerland") dated March 19, 2009. Exhibit D, Dkt. 270-4. The invoice includes a ship date of March 15, 2009, along with a list of several specific items. Although Ryan Cole's affidavit states that this invoice shows that materials were provided on March 19, 2009, at the hearing Ryan Cole testified that he could not tell from the invoice the date on which materials may have been delivered to the Project site. Therefore, the Court finds this invoice insufficient to prove that Badgerland provided materials on or after March 17, 2009.

Jack Hall Construction Inc.

Ryan Cole attached an invoice from Jack Hall Construction Inc. ("Jack Hall") dated May 6, 2009, as evidence that Jack Hall provided labor and materials as late as March 31, 2009. Ryan Cole's Affidavit dated Jan.5, 2016 at 3, Dkt. 270-4; Exhibit E, Dkt. 270-4. The description on the invoice is dated March 31, 2009 and states: "Supplied labor and material to do concrete work." *Id*.

First, Alliance has previously admitted that it was a plumbing subcontractor for the Project. *See* Alliance's Statement of Facts ¶7, Dkt. 206. Alliance has not explained why it would require a concrete subcontractor to complete its work under the contract.

Second, at the hearing, Ryan Cole testified that Jack Hall performed concrete work over the course of several weeks and March 31, 2009, was the completion date. However, when questioned about the language of the invoice, Ryan Cole admitted

that it did not state that work was completed on March 31, 2009. Without additional information on when and whether the other work was actually performed, the Court finds this invoice standing alone is insufficient to prove that Jack Hall provided labor or materials for Sunlee or Alliance on or after March 17, 2009.

Mobile Mini, Inc.

Ryan Cole attached two invoices from Mobile Mini, Inc. ("Mobile Mini"). Exhibit F, Dkt. 270-4. The first invoice is dated March 12, 2009, for a storage container located at the Project site for the rental period from March 16 to April 12, 2009. *Id.* The second is dated April 9, 2009, for a storage container located at the Project site for the rental period from April 13 to May 10, 2009. *Id.* At the hearing, Ryan Cole testified that Mobile Mini provided a mobile office, porta-potties, and a storage container to the Project site. He testified that the two attached invoices were for the storage container.

In general, equipment rental costs are covered by the Miller Act. *United States use of Time Savers, Inc. v. J.D.L. Construction, Inc.*, No. 89 C 8589, 1990 U.S. Dist. LEXIS 2189, at 1-2* (N.D. Ill. Feb. 20, 1990) (citing *Illinois Surety Co. v. John Davis Co.*, 244 U.S. 376 (1917). For the supplier of rental equipment, the Miller Act limitations period begins to run when the "equipment is no longer available for use by the subcontractor on the project." *United States use of Pippin v. J.R. Youngdale Constr. Co., Inc.*, 923 F.2d 146, 149-50 (9th Cir. 1990). "The equipment is no longer available for the subcontractor's use on the particular project when the subcontractor's relationship with the project is ended by the subcontractor abandoning the project or by the prime contractor terminating its contract with the subcontractor." *Id.* at 150.

It is undisputed that Alliance was terminated as of April 7, 2009. Accordingly, any lease for equipment beyond that date would not assist Alliance in proving that its claim was timely filed. *See Pippin*, 923 F.2d at 150 (finding that equipment is no longer available for use once the subcontractor is terminated).

As to the lease period from March 16 to April 12, 2009, Dai Bui testified that as of March 9, 2009, Sunlee and Alliance's former employees became employees of Alacran. Liberty's Exhibit 6, Dkt. 301-1. Alliance did not provide any objective evidence contradicting Dai Bui's testimony to show that it was still involved in the Project after March 9, 2009. *Compare United States use of SGB Universal Builders Supply, Inc. v. Fidelity & Deposit Co.*, 475 F. Supp. 672, 674-75 (E.D.N.Y. 1979) (finding that a lessor was unable to recover rental payments for the six months the equipment was left on site and accruing unnecessary rental costs after subcontractor left the project because a "lessor can hardly be said to be 'furnishing or supplying' the equipment to a subcontractor who has deserted the project and

has ceased to use the equipment.") *with United States ex rel Carlisle Construction Co. v. Coastal Structures, Inc.*, 689 F. Supp. 1092, 1100 (M.D. Fla. 1988) (allowing lessor to recover six months of lease payments after contractor was terminated because lessor mitigated its damages by leaving the crane on site and not incurring a $20,000 to $30,000 return fee by instead leased it to the new contractor).

Dai Bui further testified that after March 9, 2009, but before Alacran mobilized additional workforce on March 16, 2009, Alacran did use some of the plumbing materials that were being stored inside of the rental containers. However, once Alacran mobilized its workforce on March 16, 2009, none of the rental equipment was being used by Alacran. *Cf. United States Department of the Navy ex rel. Andrews v. Delta Contractors Corp.*, 893 F. Supp. 125, 130 (D.P.R. 1995) (allowing recovery for lease payments after subcontractor was terminated, in part, because the general contractor continued to use the equipment for the project). Alliance provided no contrary evidence that it was on the Project site such that the equipment was still "available for use." *See Pippin*, 923 F.2d at 149-50.

At the hearing, Ryan Cole testified that other than calling the subcontractors after receiving their invoices to confirm that they were still on the Project in March 2009, he was not at the job site to confirm that the storage container was being used on March 17, 2009 or later, rather than just sitting on the Project site with a recurring rental contract. Additionally, there was no evidence presented that Mobile Mini believed in good faith that the storage containers were supplied for the Project, or of when it determined that Alliance had abandoned the Project so as to remove its rentals from the Project site. *See United States use of Sunbelt Pipe Corp. v. United States Fidelity & Guaranty Co.*, 785 F.2d 468, 470 (4th Cir. 1986) ("If the supplier reasonably believes, in good faith, that the material furnished is to be used in the bonded project, he has the protection of the bond."); *see also Frank Briscoe Co. v. United States*, 396 F.2d 847, 848 (10th Cir. 1968) (imposing a duty upon the lessor to keep himself informed about the subcontractor's activities on the job site). All we have here are two rental invoices. Therefore, the Court finds the invoices and Ryan Cole's testimony insufficient to prove that Mobile Mini provided materials, as interpreted under the Miller Act, on or after March 17, 2009.

<u>United Rentals</u>

Ryan Cole attached four invoices from United Rentals. Exhibit G, Dkt. 270-4. Two of the invoices are for the rental of two boom lifts for the Project site. Exhibit G at 21, 24, Dkt. 270-4. The invoices indicate that the booms were rented from December 30, 2008 until March 31, 2009. *Id.* The remaining two invoices are for the rental of two heaters. Exhibit G at 22-23, Dkt. 270-4. The invoices indicate that the heaters were rented from January 14, 2009 until March 31, 2009. *Id.*

The invoices do no indicate the date that the booms or heaters were in use, only the period that they were rented. At the hearing, Ryan Cole testified that he had no personal knowledge of whether the boom or heaters were used on or after March 17, 2009. Ryan Cole did testify that one of the invoices for the boom listed fuel charges with a billing date of March 24 through March 31, 2009. *See* Exhibit G at 24, Dkt. 270-4. The Court has reviewed this invoice and finds that it does not support Ryan Cole's position that the boom was used on or after March 17, 2009. First, the invoice does not indicate the dates the fuel was used; only the billing date for the invoice generally. Second, the fuel charge appears to have been assessed on the date of the equipment's return rather than on the date the fuel was used. *Compare* Exhibit G at 22, Dkt. 270-4 (4 Week Billing Invoice for booms with no fuel charges) *with* Exhibit G at 24, Dkt. 270-4 (Rental Return Invoice with fuel charges and damage assessment for booms once returned to rental company).

Dai Bui testified that he was familiar with several of Sunlee's subcontractors that leased equipment to the Project and confirmed that the rental equipment was on the Project site. In particular, equipment from United Rentals was still on site after March 28, 2009. However, Dai Bui testified that once Alacran mobilized its workforce on March 16, 2009, its workers never used the equipment Sunlee had rented. Alacran did not need to use Sunlee's rental equipment because Alacran had its own.

The Court agrees with Alliance that the rental equipment need not be in continual use. *See United States ex rel Mississippi Road Supply Co. v. H. R. Morgan, Inc.*, 542 F.2d 262, 269 (5th Cir. 1976). Nevertheless, there must be some objective evidence that it was used on March 17, 2009, or later. Without more about these rentals, the Court finds these invoices insufficient to contradict Dai Bui's testimony that neither Alliance, Sunlee nor Alacran used the rental equipment after March 16, 2009. *See Pippin*, 923 F.2d at 150 (finding that equipment is no longer available for use once the subcontractor abandoned the project or is terminated).

Williams Scotsman, Inc.

Ryan Cole attached an invoice from Williams Scotsman, Inc. ("Williams Scotsman") dated June 1, 2009, for rental of a mobile office that month. Exhibit H, Dkt. 270-4. The invoice also references two open invoices with due dates of April 1, 2009 and May 1, 2009 and the amount still owed. *Id.* Ryan Cole's affidavit states that Williams Scotsman provided materials for the Project on or after March 17, 2009, claiming this invoice is for "materials provided for the Fort McCoy Project from [sic] through April 1, 2009 (and thereafter)." Ryan Cole's Affidavit dated Jan. 5, 2016 at 4, Dkt. 270-4.

At the hearing, Ryan Cole testified that this was not one of the invoices that he questioned the subcontractor about in March 2009. He also conceded during the hearing that although his affidavit relies on the invoice as evidence that Williams Scotsman provided materials to the Project through April 1, 2009, nothing on the invoice actually supports that, and that nothing on the invoice identifies when equipment was used or by whom. Accordingly, the Court finds this invoice insufficient to prove that Williams Scotsman provided materials on or after March 17, 2009.

\* \* \*

None of the seven subcontractors addressed above submitted any affidavits or provided any testimony stating that they supplied labor or materials to the Project through March 17, 2009, let alone April 7, 2009. At the hearing, Ryan Cole testified that he was familiar with everything on the Project, but his answers to additional questions revealed that he had little to support the exact date these subcontractors last worked on or supplied materials to the Project and provided very little testimony about Alliance's work on the Project. All the Court has before it are invoices and Ryan Cole's general statement that each of these subcontractors "provided labor and materials for the Project through March 25, 2009." Ryan Cole's Affidavit dated Jan. 5, 2016 at 2-4, Dkt. 270-4. The invoices themselves provide no indication of when the work took place or when materials were delivered. Moreover, merely leaving rental equipment on the job site on or after March 17, 2009, without more, is not enough to show that Alliance was providing labor and materials as interpreted under the Miller Act.

Other than the subcontractors' invoices, the only additional evidence that Alliance submitted was portions of the deposition testimony of Fort McCoy employee Mary Purpus to authenticate numerous government contract progress reports and contract inspection forms for the Project. *See* Exhibit 5, Dkt. 270-5. Alliance relies on two forms in particular, Contract Progress Report No. 22 relating to the period of March 16 to March 20, 2009 (Exhibit 4 at 18, Dkt. 270-5), and Contract Inspection Forms relating to the period of March 16 to March 22, 2009 (Exhibit 6 at 95-96, Dkt. 270-5), to assert that work was performed on or after March 17, 2009. Alliance's Trial Brief at 8-9, Dkt. 268. In particular, Alliance claims that the Contract Progress Report No. 22 references a concrete pad and metal stairs, HVAC and drywall work being done during the period of March 16 to March 20, 2009 because the report indicates that 1% was completed during this time period. Exhibit 4 at 18, Dkt. 270-5. Other than citing the report itself, no other information or explanation was provided. Alliance does not explain how it was involved in this type of work when it was hired to complete plumbing work for the Project. Moreover, the Court is left with little evidence to determine whether the 1% of work that was completed during this the time period occurred on March 16 2009, as opposed to March 17, 2009 or later. *See* Exhibit 4 at 18, Dkt.

270-5. Similarly, at the hearing Alliance referenced Contract Progress Report No 25 for the time period of April 6 through April 10, 2009. *See* Exhibit 5 at 51, Dkt. 270-5. It shows 0.25% of the plumbing work was completed during this time period. *Id.* Again, the Report gives no indication whether the work was completed on April 6, 2009, or on April 7, 2009 and later, when Alliance had been terminated from the Project.[9]

Alliance further asserts that the Contract Inspection Form for Building 654 indicates workers were performing HVAC, electrical, flooring and sewer/water work for the period of March 16 to March 20, 2009. Exhibit 6 at 95, Dkt. 270-5. Alliance states that it was performing the sewer/water work on the Project. According to the Contract Inspection Form, it identified sewer/water subcontractors working from March 17 through March 20, 2009. Exhibit 6 at 95, Dkt. 270-5.

While this may be relevant to proving Alliance's claim was timely filed, the Form itself does not support Alliance's position. In the work element section of the Contract Inspection Form, it only shows 2% complete for HVAC. Exhibit 6 at 95, Dkt. 270-5. None of the other sections for work, including plumbing, show a percentage completed during the time period. *Id.* The Contract Inspection Form for Building 2779, during the same time period, similarly fails to identify a percentage complete for any plumbing work during this time period. Exhibit 6 at 96, Dkt. 270-5. Even if the Court is to determine that one or both of these forms shows that work was being done during the dates specified, Alliance has failed to provide any evidence on who was performing the alleged work on March 17, 2009 or after, whether it was Alliance, a subcontractor hired by Sunlee, or someone working for Alacran. The forms merely state that Alacran was the contractor. Without more, it is unclear whether work was being performed for Alliance on or after March 17, 2009.

---

[9] Not only was Alliance not involved in the Project after its termination, but the parties' contracts for the Project also seem to prevent Alliance from recovering for work performed post-termination. *See United States v. Millers Mutual Fire Insurance Co.*, 942 F.2d 946, 953 (5th Cir. 1991) (finding that the language of contract supported a finding that subcontractor could not recover for the cost of labor and materials provided after termination); *see also* Exhibit 1 at 13 and 26, Dkt. 270-1 (stating that if Alliance defaults, WTI (Alacran) "may terminate the Agreement and take possession of the site and of all materials, equipment, tools and construction equipment and machinery thereon owned by [Alliance] and may finish the Work by whatever method [WTI (Alacran)] may deem expedient"); *id.* (stating that if WTI (Alacran) terminated out of convenience, Alliance would not be entitled to any lost profits on Work not performed and "shall only be entitled to recover the undisputed amounts due for Work properly completed and stored as of the date of [WTI's (Alacran's)] written notice to [Alliance] of [WTI's (Alacran's)] intent to terminate the Agreement, plus any additional work performed thereafter at the written request of [WTI (Alacran)]").

Alliance was required to show that it or one of its subcontractors provided labor or materials to the Project on March 17, 2009, or later. The Court finds that Alliance has not met its burden because it failed to provide specific evidence as to when work was performed and/or by whom. Accordingly, it is this Court's Report and Recommendation that Alliance's Miller Act claim (Count I) be barred by the one-year limitations period. Any objection to this Report and Recommendation must be filed by March 27, 2018. Failure to object may constitute a waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989).

Dated: March 13, 2018          By:

                                              Iain D. Johnston
                                              United States Magistrate Judge