IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| The United States of America, for the use and benefit of Alliance Mechanical, Inc., et al., | ) ) ) ) Case No. 11 C 50126 |
| Plaintiffs, | ) ) |
| vs. | ) ) Judge Philip G. Reinhard |
| Alacran Contracting, LLC, et al., | ) ) |
| Defendants. | ) |

## ORDER

For the reasons stated below, plaintiff's motion for default judgment is granted. Judgment is entered in favor of plaintiff, Alliance Mechanical, Inc. and against defendant Alacran Contracting, LLC in the amount of $417,655.42 on Count II (Breach of Contract) of plaintiff's second amended complaint. Alacran was a nominal defendant in Count I and Count I is dismissed against it. Per the court's May 2, 2018 order [314], judgment is entered in favor of Liberty Mutual Insurance Company and against Alliance Mechanical, Inc. on the Count I Miller Act claim. This case is terminated.

## STATEMENT-OPINION

An order of default [163] was entered against defendant Alacran Contracting, LLC ("Alacran")[1] on April 7, 2015. On May 2, 2018, the court entered an order [314] resolving the claim of plaintiff, Alliance Mechanical, Inc. ("Alliance"), against Alacran's co-defendant, Liberty Mutual Insurance Company ("Liberty") in Liberty's favor. Thereafter, Magistrate Judge Johnston entered an order [317] giving plaintiff until June 15, 2018 to file a motion (along with supporting affidavits and exhibits) for default judgment against Alacran. Judge Johnston's order set July 9, 2018 as the deadline for Alacran to file a response. Plaintiff filed its motion [320], supporting affidavit, and exhibits on June 15, 2018. Alacran filed a response [322] on July 9, 2018 and plaintiff filed a reply [323] on July 23, 2018. Plaintiff's motion claims it is entitled to judgment in the amount of $417,655.42. Alacran responds that plaintiff "is owed the amount of 0.00."

---

[1] Alacran previously had assumed by assignment the obligations of Weatherproofing Technologies, Inc. ("WTI") to plaintiff.

1

"There are two stages in a default proceeding: the establishment of the default, and the actual entry of a default judgment. Once the default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks. This two-step process is clearly outlined in Rule 55(a) (entry of default) and Rule 55(b) (default judgment) of the Federal Rules of Civil Procedure. The basic effect of an entry of default (step one) is that upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." VLM Food Trading Int'l, Inc. v. Illinois Trading Co., 811 F.3d 247, 255 (7th Cir. 2016) (internal quotation marks and citations omitted.).

Plaintiff's second amended complaint alleged plaintiff entered into written lump sum contracts (copies of which were attached to the second amended complaint) with WTI for rehabilitation work on certain bachelor officers quarters at Fort McCoy; that plaintiff also performed upgrades on plumbing that were not included in the original written contracts at four buildings at Fort McCoy; that plaintiff substantially completed all portions of the contracted work including work required to be done under written and oral amendments, supplements and modifications to the contracts and performed all conditions of the contracts as modified, supplemented, and amended through March 9, 2009; that plaintiff has demanded payment for the work and that WTI refused to pay.

Based on the entry of default, these well-pleaded allegations as to liability are taken as true. Id. Taking the allegations as true, Alacran, by virtue of its assumption by assignment of WTI's obligations, is liable to plaintiff for breach of contract for failing to pay for the work performed, by plaintiff pursuant to the various agreements.

Plaintiff claims damages from Alacran's breach in the sum of $417,655.42. This claim is supported by the affidavit of Ryan Cole. Cole's affidavit details the damages as follows: $120,163.60 due for services performed and materials supplied under the two written lump sum contracts. Each contract was for $73,720. One of those contracts was certified as 75% complete by Alacran and Fort McCoy with a total due based on the percentage of completion of $55,290. The other was certified as 88% complete by Alacran and Fort McCoy with a total due based on percentage of completion of $64,873.60. According to Cole's affidavit, plaintiff was also owed $50,000 for materials that it had ordered and stored on the job site but had not been included in the percent of work complete. Cole's affidavit also stated plaintiff was owed $247,491.82 for plumbing upgrades performed pursuant to change orders authorized by WTI or Alacran.

Alacran contends that it does not owe this amount but, in fact, owes plaintiff nothing. Alacran argues that "due to the payments made by [Alacran] for the wages of [plaintiff's] laborers, payments made by [Alacran] for materials ordered by [plaintiff], and invoices received by [Alacran] from 3rd parties for work purported to be completed by [plaintiff]" that the amount owed by Alacran to plaintiff is zero. Alacran submits the affidavit of its president, Dai Bui, in

2

support of this argument.[2] Alacran does not identify the legal principle that entitles it to a judgment of zero nor offer any legal authority in support of its position. Plaintiff replies that Alacran is improperly raising a defense to liability – the defense of "payment", see Fed. R. Civ. P. 8(c)(1) (listing "payment" as an affirmative defense that generally must be pled), – and that all defenses to liability are barred by the entry of default.

Bui's affidavit states Alacran paid SunLee/Alliance[3] laborers from March 8, 2009 through March 14, 2009. It does not state the amount paid but appears from the exhibits to be approximately $23,000. Alacran also paid $47,781.21 to the Department of Labor which then distributed the money to SunLee and Alliance employees. The affidavit states that labor and materials alleged to have been provided by plaintiff were partially completed by other parties including Janesville Plumbing which invoiced Alacran for work completed on the project from January 12, 2009 to February 20, 2009 in the amount of $4,655.00. Bui asserts that Alacran paid $129,075.28 to Ferguson Enterprises, Inc. and $140,849.89 to First Supply Co. for materials plaintiff was obligated to pay for but did not.

No counterclaim was ever filed against plaintiff in this case. On July 29, 2014, Magistrate Judge Johnston ordered [114] the parties to file an agreed document identifying all claims on the complaints and counterclaims in this case and in case number 10cv50067. The parties filed this agreed document [115] on August 18, 2014. The document identified plaintiff's second amended complaint with claims under the Miller Act (Count I) and for breach of contract (Count II). It noted WTI had filed an answer and affirmative defenses. No counterclaim was identified as pending and none was subsequently filed.[4]

"A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). "A pleading may state as a counterclaim against an opposing party any claim that is not compulsory." Fed. R. Civ. P. 13(b). If a defendant wants to reduce the amount of its liability to the plaintiff by asserting that the plaintiff owes the defendant money, the proper procedure is for

---

[2] Bui's affidavit also asserts additional facts that do not relate to payments made for wages and materials and to the issue of invoices from 3rd parties for work purportedly done by plaintiff. While these additional facts are not germane to the argument Alacran advances in its response, plaintiff does address them in its reply and the court will review them.

[3] The affidavit refers to SunLee and Alliance employees. SunLee was the plaintiff in a separate action (10cv50067) in this court against Alacran. SunLee is not a party to this action.

[4] On November 24, 2014, Alacran purported to assert a counterclaim (which included claimed payments it made to plaintiff's employees, subcontractors, and for materials) against plaintiff in Count III of its counterclaims in case No. 10cv50067 (Dkt # 100, pp. 60-64 in that case). However, by then plaintiff was no longer a party to that case [25] [26] [80]. Subsequently, all of Alacran's counterclaims (including those directed against plaintiff) in 10cv50067 were stricken for want of prosecution by the court (Dkt # 123 in that case) and a final judgment has entered against Alacran in that case. (Dkt # 287 in that case)

3

the defendant to plead a counterclaim – under Rule 13(a) if plaintiff's debt to the defendant arises out of the same transaction as plaintiff's claim against defendant or under Rule 13(b) if it does not arise out of the same transaction. See Ace Hardware Corp. v. Marn, Inc., No. 06-CV-5335, 2008 WL 4286975 *8 (N.D. Ill. Sept. 16, 2008).

Alacran is asking the court to find that the amount of money plaintiff owes Alacran for payments Alacran made to cover plaintiff's debts on the Fort McCoy project is equal to or exceeds the amount Alacran owes plaintiff for the work completed and materials supplied on the Fort McCoy project. Neither Alacran nor WTI filed a counterclaim in this case (a counterclaim on which it would have had the burden of proof, id.) seeking this relief. WTI answered [60] the second amended complaint on January 10, 2011. The answer did not raise these payments as an affirmative defense.[5] WTI was certainly aware at that time of any claim it had for payments it made on plaintiff's behalf in 2009. Alacran cannot now raise in opposition to a motion for default judgment what it should have brought as a counterclaim under Rule 13 many years ago.[6]

As noted above, Bui's affidavit also asserts additional facts that do not relate to the argument made in Alacran's response (i.e., that payments were made for wages and materials and that invoices were issued from 3rd parties for work purportedly done by plaintiff.) While no argument was made by Alacran concerning these facts, plaintiff addresses them and the court will discuss them now.

Bui's affidavit asserts that plaintiff "generated an invoice dated February 7, 2009 in the amount of $25,480.74. The invoice did not comport with the contractually obligated form, nor were waivers obtained from subcontractors, vendors, and/or suppliers before payment could be issued, pursuant to the contract. The invoice accounted for 34.6% of work completed for only part of the barracks project. No other invoices have been produced by [plaintiff]." The affidavit claims the work performed on the project was not performed in a workmanlike manner and that "Fort McCoy, WTI, or Alacran did not request any upgrades that would necessitate any change orders." The affidavit states that "progress payments in the amount $442,780.00 were made to SunLee from Alacran."

These facts go to defenses which are precluded by the entry of default. The affidavit claims the work was not completed in a workmanlike manner. It claims some of the labor and materials alleged to have been provided by plaintiff were partially supplied by other parties and that neither Fort McCoy, WTI, or Alacran requested any upgrades that would necessitate any

---

[5] Had it done so, the court, if justice required, could have treated it as a counterclaim. Fed. R. Civ. P. 8(c)(2).

[6] Alternatively, as plaintiff argues a claim that a defendant has made payment is an affirmative defense. Fed. R. Civ. P. 8(c)(1). Even if Alacran/WTI was not required to raise these payments as a counterclaim, they would have had to be raised as an affirmative defense (that the payments to and for employees and vendors were, in effect, payments to plaintiff.) No such affirmative defense was raised and once default was entered, any such defense was precluded anyway. VLM Food, 811 F.3d at 255.

4

change orders. It asserts plaintiff failed to submit an invoice in the form required by the contract and failed to submit required lien waivers with this invoice. These facts all go to defenses to liability. The entry of default precludes any defense to liability. <u>VLM Food</u>, 811 F.3d at 255.

As to the $442,780.00 Bui asserts was paid to SunLee, Alacran was given a credit of $442,789.88 for this payment in the order granting judgment in favor of SunLee against Alacran in case No. 10-cv-50067 (Dkt. # 286 in that case). The money was paid to SunLee and credited against Alacran's liability to SunLee. It will not be credited to Alacran again here.

For the foregoing reasons, plaintiff's motion for default judgment is granted. Judgment is entered in favor of plaintiff, Alliance Mechanical, Inc. and against defendant Alacran Contracting, LLC in the amount of $417,655.42 on Count II (Breach of Contract) of plaintiff's second amended complaint. Alacran was a nominal defendant in Count I and Count I is dismissed against it. Per the court's May 2, 2018 order [314], judgment is entered in favor of Liberty Mutual Insurance Company and against Alliance Mechanical, Inc. on the Count I Miller Act claim. This case is terminated.

Date: 8/02/2018    ENTER:

_____
United States District Court Judge

Electronic Notices. (LC)